

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED

AUG – 8 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

CHILD EVANGELISM FELLOWSHIP OF
VIRGINIA,
        **Plaintiff,**

v.

**CIVIL ACTION NO. 4:08cv4**

WILLIAMSBURG-JAMES CITY COUNTY
SCHOOL BOARD, GARY S. MATHEWS, in his
official capacity as Superintendent of
WILLIAMSBURG-JAMES CITY COUNTY
PUBLIC SCHOOLS,

        **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Child Evangelism Fellowship of Virginia's ("Plaintiff") Motion for a

Preliminary Injunction ("Motion") and Memorandum in Support of the Motion. Additionally,

before the Court is Williamsburg-James City County School Board's ("Defendant") Opposition

to the Motion and Plaintiff's Rebuttal to the Memorandum in Opposition to the Motion.

Additionally, before the Court is Gary Mathews', Williamsburg-James City County Public

Schools Superintendent, Motion to Quash. Having thoroughly reviewed the parties' memoranda

and conducting a hearing on the Motions on April 21, 2008, Plaintiff's Motion is **GRANTED**

and the Motion to Quash is **DENIED as MOOT.**[1]

---

[1]     The parties stipulate that the Motion to Quash is resolved and should be set aside
as moot.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a local chapter of an international non-profit religious organization.  One of its ministries is the "Good News Club," ("GNC") which is an after-school enrichment program for children between the ages of five and twelve.  GNC meetings are generally conducted in public elementary schools, which Plaintiff finds most convenient and safe for students and parents. (Compl. ¶¶ 21-23.)  These meetings include Bible lessons, creative learning activities, stories, songs, and memorizing scripture.  (Compl. ¶ 18.)  The goals of the meetings are to encourage children to participate in community service and to teach children Biblical principles, moral values, character qualities, respect for authority, and how to deal with relationships and important community issues.  (Compl. ¶ 19.)  Any child who has prior written permission from his or her parents may participate in GNC, regardless of his or her religious background or lack of religious belief.  (Compl. ¶ 16.)  Meetings are free to the children; no fees, tithes or contributions are taken at the meetings and the children do not participate in fund-raising activities.  (Compl. ¶ 17.)

In October 2003, shortly after the passage of the Boy Scout Act, Defendant approved an extension to its facilities policy, which granted the Superintendent the discretion to waive usage fees "in consideration of services rendered by public institutions or nonprofit organizations in direct support of public school students or staff," without defining the terms by which this discretion should be exercised. (Compl. Ex. A at 2.)  School Board Policy AD, entitled "Educational Philosophy," states that "the most important challenge facing the school is to provide each student with experiences for meeting his or her needs as a participating, responsible citizen in a democratic society" and further provides that "to accomplish these goals, all available resources in the community, the home and the school must be used."  (Compl. ¶¶ 64-65.)

2

Under the revised policy, rental fees were waived for: (1) any James City County or City of Williamsburg agency, or group affiliated with those agencies; (2) all school division groups and school sponsored activities; (3) all Boy Scout and Girl Scout activities and other patriotic organizations as defined in the Code of Virginia and in the No Child Left Behind Act; (4) specific events run by local charitable organizations; and (5) activities sponsored by school partners where there is a written partnership agreement. (Compl. Ex. A at 2.) Although the policy does not define the parameters that designate an organization into the above categories, religious organizations are classified as "other organizations" that must pay rental fees. (Compl. Ex. A at 1, 3.) Around February 2007, Plaintiff requested the use of DJ Montague Elementary School for a GNC meeting and asked that the fee be waived. (Compl. ¶¶ 44-45.) Plaintiff was granted permission to use the facility but the fee waiver was not granted.

Over a six month period, Plaintiff repeatedly requested that the fee be waived. (Compl. ¶ 50.) Plaintiff sent a letter through legal counsel informing Defendant of the First Amendment requirement that GNC be offered the same accommodations offered to Boy Scouts and similar organizations. (Compl. ¶ 49.) When the superintendent responded five months later, he reiterated that he would not grant the fee waiver and that the District's legal counsel assured him that the policy was "sound." (Compl. ¶¶ 55-56.) On January 23, 2008, Plaintiff filed its Complaint, a Motion for a Preliminary Injunction, and a Memorandum in Support of its Motion. On February 4, 2008, Defendant filed its Memorandum in Opposition and on February 7, 2008, Plaintiff filed its Rebuttal Brief. On April 21, 2008, the Court conducted a hearing on the Motion for a Preliminary Injunction and the Motion to Quash.

3

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 allows district courts the discretion to grant preliminary relief prior to the adjudication of the underlying dispute. *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989). In *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") established the standard for preliminary injunctions. The *Blackwelder* hardship balancing test requires that the court consider: (1) the likelihood of irreparable harm to the movant if the preliminary injunction is denied; (2) the likelihood of harm to the non-movant if the requested relief is granted; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (citing *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)); *see Blackwelder*, 550 F.2d at 193-95. The plaintiff bears the burden of establishing that each of these factors supports granting the injunction. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (internal citations omitted).

Under the *Blackwelder* four-part inquiry, the first two factors regarding the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied and of the harm to the defendant if the injunction is granted are the most important. *Id.* The Fourth Circuit holds that it is axiomatic that a "clear showing of irreparable harm" is a prerequisite to the issuance of a preliminary injunction. *Direx Israel*, 952 F.2d at 812. Moreover, the required harm demonstrated must be "neither remote nor speculative, but actual and imminent." *Manning*, 119 F.3d at 263 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991) ("The

4

'balance of hardship' test does not negate the requirement that the [movant] show some irreparable harm.").

If, after balancing the first two factors, the balance "tips decidedly" in favor of the movant, a preliminary injunction will be granted if the movant has raised questions going to the merits "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and, thus for more deliberate investigation." *Rum Creek*, 926 F.2d at 359. However, as the balance tips away from the movant, a stronger showing on the merits is required. *Id.* The final factor that a movant must show as a prerequisite for preliminary injunctive relief is whether the "public interest would be served by the injunction." *Scott*, 315 F.3d at 286.

### III. DISCUSSION

#### A) Likelihood of Irreparable Harm to Movant without Injunction

Generally, irreparable injury is suffered when "monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). Plaintiff claims that it has suffered two types of irreparable harm in the instant case: financial and constitutional. First, Plaintiff contends that it has suffered a significant financial burden as a result of the $12.50 per hour charge for the use of a classroom for its meetings. Plaintiff also argues that because of the charges, it will have to severely cut back or even discontinue its club meetings for children. In contrast, Defendant argues that Plaintiff has not suffered any irreparable harm because the actual harm was a minuscule monetary fee that the Plaintiff has been able to pay. From March 15, 2007 through the end of the 2007-2008 school year, Plaintiff paid about $250 in fees, which Defendant points out is less than

5

the $350 in filling fees that Plaintiff paid for the instant action. Therefore, Defendant argues that

because Plaintiff continues to pay fees for its use of the school and can afford to file for the

instant case, there is no urgency. Further, Defendant argues that by the time this case is decided

Plaintiff will have paid about $1,000 in fees, which Defendant does not believe qualifies as

"irreparable harm."

Neither Plaintiff's nor Defendant's arguments are very persuasive. It is obvious that the

effects of paying $1,000 on an organization is subjectively burdensome depending on the

endowment of the organization. However, it is the Plaintiff's burden to prove that it will suffer

irreparable harm, not the converse.

Second, Plaintiff argues that the discriminatory fees impede its ability to exercise its First

Amendment freedoms. The Supreme Court has repeatedly held that "[t]he loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In *Wallace v. Jaffree*, 472 U.S. 38 (1985),

the Supreme Court noted that the district court granted a preliminary injunction, based on the

finding that the appellees would likely prevail on the merits, yet ultimately found that the

appellees First Amendment rights had not been violated under the Establishment Clause.

Although the injunction was not the main focus in *Wallace*, the Court noted the district court's

reason for granting the injunction: "injury to plaintiffs from the possible establishment of religion

. . . contrary to the proscription of the establishment clause outweighs any indirect harm which

may occur to defendant's as a result of an injunction." *Wallace*, 472 U.S. at n.22 (Even though

the Supreme Court upheld the appellate court's reversal on this issue, ultimately the Supreme

Court found that the statutes were a violation of the Establishment Clause, which is in line with

6

the district court's granting of the injunction.).

All of the previous discussion assumes that Defendant violated Plaintiff's First Amendment rights; however, the Court must decide whether Plaintiff has in fact suffered a violation of its constitutional rights. The Supreme Court has held that although the government does not have to allow all speech on all of its property at all times, when it opens its property to private speech, it may not then discriminate based upon the viewpoint of the speaker. *See Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). In non public forums, the government may draw distinctions based on subject matter and speaker identity, but restrictions must reasonably serve the purpose of the forum and must be viewpoint-neutral. *Anderson*, 470 F.3d at 1067. In *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804 (1984), the Court explained that, "[t]he general principle that has emerged . . . is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." Additionally, in *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Board*, 502 U.S. 105, 115 (1991), the Court held that, "[a] statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech."

Specifically, the Court must decide whether forcing a religious organization to pay a fee, while nonreligious organizations are exempt, is a violation of First Amendment rights. In a case that has almost identical facts, the Fourth Circuit held that a nonprofit religious organization's First Amendment challenge to a school district's policy that charged organizations for after-hours

7

use of school facilities, while allowing free use of the same facilities by other groups, was to be decided under a limited public forum analysis. *Anderson*, 470 F.3d at 1069. The court held that one "corollary of the prohibition on viewpoint discrimination is that the principle administrators may not possess unfettered discretion to burden or ban speech, because 'without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.'" *Id.* at 1068 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763-64 (1988). Further, the court held that a school district's fee-waiver policy for after-hours use of school facilities, which contained a provision that the district reserved the right to "waive any or all charges as determined to be in the district's best interest," violated the First Amendment's prohibition against viewpoint discrimination in limited public forums. *Id.* at 1069.

In the case at bar, Defendant's policy has similar catch-all language to that of *Anderson* and offers its superintendent complete unfettered discretion in deciding who benefits from the fee-waiver. Defendant argues that its policy language is not vague and that it does not give unfettered discretion to the superintendent. Defendant further argues that the new policy was created to eliminate discretion and possible discrimination against the Boy Scouts and Girl Scouts. The new policy states that rental fees are waived for any James City County or City of Williamsburg agency, or group affiliated with those agencies; all school division groups and school sponsored activities; all Boy Scout and Girl Scout activities and other patriotic organizations as defined in the Code of Virginia and in the No Child Left Behind Act; specific events run by local charitable organizations; and activities sponsored by school partners where there is a written partnership agreement. (Compl. Ex. A at 2.) Plaintiff argues that the under the plain meaning of the terms in

8

the policy, GNC would qualify as a group affiliated with all school division groups, a patriotic organization, or a charitable organization running a specific event. However, without giving an explanation the superintendent decided GNC does not meet the unwritten requirements of any of these categories.

Defendant's policy is no better than the "best interest" policy at issue in *Anderson*. Defendant's policy empowers its superintendent to decide which organizations are allowed to have fee waivers without setting forth any concrete standards. The policy does not define what types of organizations are considered "affiliated" with the school. Defendant argues that these are organizations or agencies in "direct support of" the school, yet this is incredibly vague. Defendant further argues that GNC meetings do not qualify as "specific events" because they are recurring, rather than a one-time event, but this too is not clear from the language of the policy. This vague policy, granting unfettered discretion to the superintendent, violates Plaintiff's First Amendment rights. As described above, a violation of First Amendment rights is considered irreparable harm. The Fourth Circuit made it clear, in its holding in *Anderson*, that a fee-waiver given arbitrarily to non-religious organizations by school administrators under the guise of enforcing a vague policy is a violation of a religious organization's First Amendment rights. Therefore, the Court finds that Plaintiff has sufficiently demonstrated that it has suffered irreparable harm.

### B) Likelihood of Harm to Non-Movant with Injunction

Defendant consistently argues in its memorandum that the harm suffered to Plaintiff is nominal. Defendant's description of the harm that Plaintiff has and will continue to suffer without an injunction, further establishes that Defendant does not believe it will suffer any financial harm if an injunction is granted. In fact, the payment of the $12.50 per hour rental fee

9

imposes a stronger financial burden on Plaintiff, a non-profit organization that argues that it may have to cut back or discontinue operation of clubs, than it does on the Defendant, which generates small revenue from its fees.  Moreover, other than concern that its policy would be temporarily set aside, Defendant could not identify any harm it would suffer if an injunction is granted. Therefore, the Court finds that Defendant will suffer nominal or no harm if an injunction is issued. When this lack of injury to Defendant is weighed against the harm to Plaintiff, a harm that Plaintiff will continue to suffer absent an injunction, the scale tips incredibly toward Plaintiff.

### C)  Likelihood of Success on the Merits

As was stated above, Plaintiff has presented a case almost identical to *Anderson*, here the Fourth Circuit found that the fee-waiver was unconstitutional. *See also Good News Club v. Milford*, 533 U.S. 98 (2001) (holding that school's denial of plaintiff's access to school facilities constituted viewpoint discrimination). Therefore, the likelihood of Plaintiff's success is high.

### D)  Public Interest

Defendant has not rebutted Plaintiff's argument that an injunction would serve the public interest.  As Plaintiff argues, protecting constitutional rights is of the highest public interest. *See Elrod*, 427 U.S. at 373.  Therefore, since this Court finds that Plaintiff is likely to suffer irreparable harm based upon the loss of First Amendment freedoms and protecting such constitutional rights is in the public interest, this injunction will be in the public's interest.

Defendant argues that Plaintiff is seeking a disfavored mandatory injunction rather than an injunction that maintains the status quo.  In its rebuttal, Plaintiff reminded the Court that it is not asking the Court to "insert itself into the daily operations of the school district or formulate a mandatory policy that must be consistently supervised, as was true in the cases relied upon by

10

Defendants." (Pl.'s Rebuttal to Def.'s Opp'n to Mot. For Prelim. Inj. 6.)  Plaintiff carefully distinguished every case cited by Defendant, contrasting the severe court remedies in each case with Plaintiff's simple request that it not be required to pay fees pending the outcome of the instant case.  As recognized by the Supreme Court in *Jaffree*, granting an injunction merely maintains the status quo existing prior to the enactment of an unconstitutional impediment imposed by a statute.  *See Jaffree*, 472 U.S. at n.22.  The Court finds that this injunction will not have the result of a disfavored mandatory injunction, in contrast, enjoining Defendant's collection of fees furthers the interest in maintaining the status quo until the case is determined on the merits.

## IV. CONCLUSION

For the reasons outlined above, Plaintiff's Motion for a Preliminary Injunction is **GRANTED**.  Accordingly, Defendants are **ORDERED** to cease and desist charging Plaintiff facility fees pending the outcome of this trial.  Additionally, Gary Mathew's Motion to Quash is **DENIED as MOOT**.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to counsel of parties of record.

**IT IS SO ORDERED**.

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
August  9  , 2008

11